UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARCH SPECIALTY INS. CO. a/s/o 2633 NAPOLEON LIMITED PARTNERSHIP | CIVIL ACTION<br>NO. 12-2047<br>C/W NO. 13-5336 |
| VERSUS | C/W NO. 13-6117 |
| C&G CONSTRUCTION ON LOUISIANA, INC. | SECTION "K"(3) |

PERTAINS TO 12-2047

## ORDER AND REASONS

Before the Court is a "Motion for Summary Judgment by Third-Party Defendant Republic-Vanguard Insurance Company." (Doc. 84). Republic-Vanguard Insurance Company ("Republic-Vanguard") seeks entry of judgment in its favor dismissing with prejudice the claims asserted by third-party plaintiff C&G Construction of Louisiana Inc. ("C&G"). Having reviewed the pleadings, memoranda, exhibits, affidavits and the relevant law, the Court finds merit in this motion.

**Background**

Arch Specialty Insurance Company as contractual subrogee of 2633 Napoleon Limited Partnership, d/b/a Napoleon Medical Building ("plaintiff" or "Arch") filed this suit to recover damages allegedly caused by C&G when it undertook to demolish and renovate a suite in the Napoleon Medical Building. Doctors Jennifer Dunlap and Frances Bryan agreed to rent Suite 805 in that building and hired C&G to perform the work. (Doc. 17, Amended Complaint, ¶ 5). C&G allegedly retained R.C.I.S., Inc. to do the actual demolition work. *Id.* at ¶ 7.

Plaintiff contends that defendants were required to submit a scope of services to Plaintiff before work could begin; however, an incomplete scope of services was submitted to hide the fact that they were doing plumbing work on the premises without retaining a plumbing subcontractor. *Id.* at ¶¶ 8 and 9. Moreover, C&G and R.C.I.S. (collectively "defendants") failed to inform 2633 Napoleon of this activity so that the water could be turned off to the space. *Id.* at ¶ 10.

Randy Cramer ("Cramer") is alleged to be an employee of "Defendant" and was responsible for the work on the project. *Id.* at ¶11 and 12. On October 21, 2011, he allegedly requested the water be shut off for Suite 804 for the following week and began the demolition. *Id. at* ¶¶ 14 and 15.

As the walls of the examination rooms were demolished, the support for the copper water piping for Suite 804 was removed, resulting in the vertical copper piping not being attached to any portion of the building or other structure for support. In addition, a light fixture was attached to the unsupported tubing. As a result, sometime between Friday afternoon and Saturday morning, the copper line broke, resulting in an unabated discharge of water throughout the facility. *Id.* at ¶¶ 17-23.

In addition, plaintiff maintains that after the accident, Cramer "apologized for performing plumbing work without a plumber and for causing the damage" and provided an explanation for the mistake. Plaintiffs also allege that in spite of directions to the contrary, Cramer had the copper line removed and examined without the presence of the owners which hampered the plaintiff from investigating the loss properly. Moreover, Cramer hired All Dry to remediate the

area, and defendants refused to pay for the service of All Dry resulting in plaintiff having to pay for uncontracted costs.  *Id.* at 25-33.

In response to these allegations, C&G filed a third party demand against RCIS, Republic-Vanguard and William Sacks Insurance alleging that under its contract with RCIS,  RCIS owed indemnity to C&G and was required to name C&G as an additional insured. (Doc. 12 Answer to Complaint and Third Party Demand).  C&G contends that Republic-Vanguard issued such a policy which contained coverage for the type of liability asserted in the main demand.  As such, C&G maintains that it is owed a defense and indemnity in this matter as an additional insured under that alleged that Republic-Vanguard policy.  (*Id.,* ¶ 2 at 11 of 15).

Specifically, C&G alleges that RCIS provided it with a Certificate of Insurance evidencing general liability insurance through Republic-Vanguard Insurance, Policy No.: RGLI112807-1 for policy period July 28, 2011 through July 28, 2012, naming C&G Construction of Louisiana, Inc. as a certificate holder. (*Id.*, ¶10 at 13 of 15).  It alleges that the certificate in question was allegedly issued by William Sacks, d/b/a William Sacks Insurance, dated September 6, 2011.  C&G contends that on October 27, 2011, in response to Sacks being advised of the claims for damages were being asserted C&G and RCIS, Sacks responded that the policy identified in the certificate had never been bound and that a cancellation of the Certificate of Insurance had been faxed to C&G on September 7, 2011, a month before the occurrence.  However, C&G contends that it has no record of Williams M. Sacks, sending or C&G receiving that alleged notice of cancellation of Republic-Vanguard Policy No. RGL112807-1.  (*Id., ¶* 14 at 14 of 15).

Republic-Vanguard filed the subject motion contending that because C&G cannot meet its burden of proof at trial to establish the existence of a policy or coverage because no policy was issued by Republic -Vanguard, Republic-Vanguard is entitled to judgment in its favor because (1) a certificate of insurance is not evidence of a policy or coverage and does not create coverage where no policy was issued and (2) the actions of William Sacks d/b/a Williams Sacks Insurance in issuing the alleged certificate of insurance cannot bind Republic-Vanguard to provide coverage because Republic-Vanguard and Sacks "do not have and have never had any business relationship."  Moreover, under Louisiana law, an insurance broker such as William Saks is the agent of the **insured** in procuring the policy of insurance not the **insurer** and thus Sacks' acts are not imputable to the insurer.  In addition, Republic-Vanguard seeks costs, expenses and attorneys' fees because of C&G's insistence in pursuing this claim in the face of overwhelming proof that there is no cause of action against Republic-Vanguard.

In support of this motion Republic-Vanguard filed the affidavit of John E. Fulton, Vice President of Republic Underwriter Insurance Company ("RUIC"), who also works on behalf of Republic-Vanguard which is an affiliate of RUIC.  (Doc. 84-2).  In this affidavit he avers that while Republic-Vanguard previously issued surplus lines commercial general liability policies in Louisiana through managing general agents licensed to produce surplus lines risks, Republic-Vanguard issued no commercial general liability policies to any Louisiana company in 2011. (Affidavit of Fulton, Doc. 84-2, ¶ 3-4).  Republic-Vanguard has no record of any insurance policy issued to RCIS or C&G.  *Id.* at ¶ 5. Moreover, the certificate of liability insurance dated September 6, 2011 issued by William Sacks and/or William Sacks Insurance or Northbrook Illinois, contains a policy number that is not a valid Republic-Vanguard policy number and is not

formatted in the same manner as policies issued by Republic-Vanguard. (*Id., ¶¶* 6-7).  The certificate  was prepared by and issued without Republic-Vanguard's involvement, and it did not know of its issuance until this lawsuit was filed.  (*Id.* at ¶ 8-9).  Republic-Vanguard (1) did not receive an application for coverage by RCIS, Inc. or C&G; (2) did not provide a quote to insure RCIS, Inc. or C&G; (2) did not issue an insurance binder covering RCIS, Inc. or C&G; (3) did not issue any policy of insurance to RCIS, Inc. or C&G; (4) has never insured RCIS, Inc. or C&G; (5) has never had any relationship with William Sacks and never had nay communication or interaction with Sacks, RCIS, Inc. or C&G prior to this litigation; (6) does no business in Illinois and has never had an agent in Illinois.  (*Id.*, ¶¶ 10-17).

With this as background, the Court will now turn to the motion for summary judgment.

**Standard Motion for Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).  When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with

"specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "  *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor."  *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.  The Court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

Under Federal Rule of Civil Procedure 56(d), a non-movant of summary judgment may request a continuance for further discovery.  In order to obtain such a continuance, the non-movant must "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  However, it has been recognized that because of the "precautionary nature of the rule. . . technical, rigid scrutiny of a Rule 56(d) motion is inappropriate."  *Union City Barge Line v. Union Carbide Corp.,* 823 F.2d 129, 136 (5th Cir. 1984).  A Rule 56(d) continuance may be justified if the nonmovant identifies the need for a continuance in a brief and not an affidavits.  *Arters v. Univision Radio Broad TX, L.P.,* 2009 WL

6

1313285, *8 n.19 (N.D. Tex. May 12, 2009) . Nonetheless, "a nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, particularly where, . . ., ample time and opportunities for discovery have already lapsed." *Id.* citing *SEC v. Spence &Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir. 1980) (citations omitted).  As stated in *Ticknor v. Rouse's Enterprises, LLC*, 2014 WL 668930 (E.D.La. February 20, 2014):

> . . . Rule 56(d) "may not be invoked by the mere assertion that discovery is incomplete; the opposing party must demonstrate how the [requested discovery] will enable him to rebut the movant's allegations of no genuine issue of material fact."  *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 28 F.3d 1388, 1396 (5th Cir. 1994) (citation and internal quotation marks omitted).  "[A] plaintiff's entitlement to discovery prior to ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment."  *Washington v. Allstate Ins. Co.* 901 F.2d 1281, 1285 (5th Cir. 1990).

*Id.* at *10.

**Analysis**

**No Proof of a Contract of Insurance**

"In an action under an insurance contract, the insured bears the burden of proving the existence of the policy and coverage.  The insurer, however, bears the burden of showing policy limits or exclusions."  *Winfrey v. Louisiana Carnival Club, Inc.* 907 So.2d 159, 162 (La. App. 4th Cir. 2005) citing *Turnstall v. Stierwald*, 809 So.2d 916, 921 (La. 2002).  As stated in *Barber v. Best*, 394 So.2d 779 (La. App. 4th Cir. 1981), "A plaintiff suing on an insurance contract has the burden of establishing the existence of the policy sued on and its terms and provisions.  Plaintiff must plead and prove his claim falls within the general policy, whereas the insurer must prove

exclusions from coverage." *Id.* at 780-81 (citations omitted).  Plaintiff here has not provided any of these materials–no policy, no terms, no provisions.

In the instant matter, the only "proof" adduced is a certificate of insurance which C&G maintains that RCIS provided to C&G evidencing that C&G is an additional insured under a general liability insurance issued to RCIS by Republic-Vanguard, Policy No.: RGLI112807-1 for policy period July 28, 2011 through July 28, 2012.  The certificate in question was allegedly issued by William Sacks, d/b/a William Sacks Insurance, dated September 6, 2012.

The introduction into evidence of the insurance policy allegedly providing coverage for the tortfeasor is an essential element of a plaintiff's burden of proof in a suit against an insurer. *Buffinet v. Plaquemines Parish Com' Council*, 645 So.2d 631, 646 (La. App. 4th Cir. 1994).  No policy  has been presented to this Court.   As such, this case is not unlike the situation in found in the  *Barber* case  where plaintiff failed to offer the insurance policy or any testimony relating to coverage.  The Louisiana Supreme Court found that even where the insurance company had actively participated in the defense of the alleged insured, failure to establish the policy's actual provisions resulted in a positive determination that there was a failure of proof as to the existence of the policy itself.  *Barber,* 394 So.2d at 780.

Moreover, during its corporate deposition, C&G's corporate representative testified that no one at C&G has ever spoken to anyone at Republic-Vanguard and never received a copy of any Republic-Vanguard insurance policy. (Doc. 94–1, 1442 Deposition of C&G at  12 of 14 (p. 70 of deposition)).  Simply put, the only "proof" on which the representative relied for coverage was the Certificate of Insurance. The only competent evidence presented demonstrates that this certificate was prepared by and issued without Republic-Vanguard's involvement or knowledge.

Moreover, even the insurance policy number format used does not comport with any of Republic-Vanguard's CGL policies. As such, it is clear, no Republic-Vanguard policy ever existed. Thus, the question is whether a certificate of insurance where no underlying policy has issued can be construed as a contract of insurance.

"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended or modified by any rider endorsement, or application attached to or made a part of the policy." La. Rev. Stat. 22:881. Louisiana courts have found that certificates of insurance do not fall under this rubric and thus cannot create coverage. As one commentator explained:

> Certificates of insurance are often issued to the designated certificate holder as proof that the named insured has insurance to cover work or operations being performed for the certificate holder and that the named insured has had the certificate holder named as an additional insured on the named insured's insurance policy. However, the presentation of a certificate of insurance alone does not create coverage or legal obligations between the insurer and the certificate holder.

3 Couch on Ins. § 40:31 (June 2014).

For example, in *All Crane Rental of Georgia, Inc. v. Vincent*, 47 So.3d 1024 (La. App. 1st Cir. 2010), Vincent claimed that damages that All Crane Rental sought against it were covered by a CGL and/or an inland marine policy of insurance issued by Scottsdale Insurance Company. The district court rendered summary judgment in favor of Scottsdale, finding that the CGL policy in question specifically excluded coverage for property that Vincent owned or leased or property that was in his care, custody or control. Vincent appealed contending that the certificate of insurance provided was the equivalent of a binder and operated to provide coverage. The certificate read: "GENERAL LIABILITY INCLUDES ALL CRANE RENTAL OF GEORGIA, INC. AS AN ADDITIONAL INSURE. INLAND MARINE COVERS

PHYSICAL DAMAGE ON EQUIPMENT THAT INCLUDES BOOM, JIB AND OVERLOAD."

The Louisiana appellate court rejected Vincent's argument citing La. Rev. Stat. 22:881 and *Citgo Petroleum Corp. v. Yeargin, Inc.,* 690 So.2d 154, *writs denied,* 701 So. 2d 169 (La. 1997). The *All Crane* court stated:

> In *Citgo,* the court was asked to determine whether a certificate of insurance issued by a policy holder to an additional insured, which purported to extend, modify or limit coverage, was binding on the original insurer. The certificate contained a disclaimer that it was issued solely for informational purposes and that it did "not amend, extend or alter" the policy's coverage.
> The court looked to the provisions of La. R.S. 22:881 for the scope of its inquiry. . . and concluded:
>> [La. R.S.22:881,] by its clear working, limits our inquiry in this case solely to the meaning of the terms and conditions of the [original] policy and "any rider endorsement or application." A certificate of insurance is not a "rider, endorsement, or application." We cannot examine the certificate for purposes of determining if it modifies the terms of coverage because, by operation of this statute, the certificate cannot amplify, extend or modify coverage.
>
> *Citgo,* 690 So.2d at 164. The court noted further that even if applicable law allowed it to consider the language of the certificate, the certificate's disclaimer was clear and unambiguous that it did not "amend, extend or alter" the coverage afforded under the policy and that it was issued for informational purposes only. *Id. Cf. Ferguson v. Plummer's Towing & Recovery, Inc. . . .,* 753 So.2d 398, 401 (La. App. 1st Cir. 2000) (citing La. R.S. 10:1-307[1] holding that a certificate of

---

[1] This statue was renumbered from La. R.S. 10:1-202 by Acts 2006, No. 533. It reads: "A document in due form purporting to be a bill of lading, policy or certificate of insurance, . . . or any other document authorized or required by a contract to be issued by a third party is prima facie evidence of its own authenticity and genuineness and of the facts stated in the document by the third party." The *Ferguson* case is the sole reported case as to this statute.
  The notes to the statute state:
> 3. The provisions of this section go no further than establishing the documents in question as prima facie evidence and leave to the court the ultimate determination of the facts whether the accuracy or authenticity of the documents is questioned. In this connection the section calls for a commercially reasonable interpretation.

La. Rev. Stat. 10:1-307, note 3. In light of the evidence produced in this case, it is clear that Republic-Vanguard has defeated the prima facie evidence as there is no evidence that such a policy ever existed.

>insurance is prima facie evidence of the genuineness of the facts stated therein if the certificate was issued between the parties to legal action but that a third party may not rely on the certificate to "change the coverage provided by an insurance policy).

*All Crane*, 47 So.2d at 1029-30.

As noted, the only proof adduced by C&G is the certificate of coverage as a named additional assured under a policy between RCIS (the allegedly named insured) and Republic-Vanguard. That certificate clearly and unambiguously states:

>THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE R PRODUCER, AND THE CERTIFICATE HOLDER.

(Doc. 89-2, page 2 of 5). Clearly, as in *Citgo*, the plain language of the certificate itself demonstrates that the certificate standing alone does not create coverage for C&G.

C&G has attached 4 other Certificates of Insurance issued by Sacks referencing the same non-existent insurance policy that were apparently provided to four other contractors who required to be named as additional insureds under a CGL policy. Pretermitting the fact that there is overwhelming evidence that Republic-Vanguard had no relationship with Sacks and that it did not write any policy of this nature during this period in Louisiana, the copies do not constitute competent evidence. They are not self-authenticating and no affidavit providing proof of their origin or authenticity has been filed into the record.

C&G also argues in its memorandum that it has received conflicting information from Sacks regarding whether policy no. RGI112807-1 is a policy number or binder number, when and from whom coverage was declined and when notice of the cancellation of the Certificate was

made to RCIS and the certificate holders. To begin, Republic-Vanguard has attested that "RGI112807-1" is not a binder number or a policy number used by Republic-Vanguard. (See Doc. 84-4, Answer to Interrogatory No. 4 at page 3 of 7). Moreover, the source of the "conflicting" information is not presented. No affidavit, deposition or any other competent evidence concerning this "information" was filed with the memorandum. As such, it is just conjecture. In addition, at this time, more than six months have passed since C&G opined that it needed more time to depose and conduct discovery concerning the relationship between William M. Sacks and Republic-Vanguard, the production fo the Certificate of Liability Insurance issued by Sacks identifying Republic-Vanguard as R.C.I.S. liability insurer, and the source of policy no. RGI11S804-1. There has been no augmentation of the record during this period of time.

### Sacks' Had No Authority to Act or Bind Coverage on Behalf of Republic-Vanguard

C&G also contends that there are material questions of fact concerning whether Sacks had authority to act as an agent and/or broker, with binding authority on behalf of Republic-Vanguard, either individually or as an agent of Dean Morgan and/or Danette Morgan for whom C&G contends Sacks was operating as an agent prior to 2012. Claiming that because an agency relationship is a factual determination to be made in consideration of the totality of the circumstances, C&G contends that summary judgment is not appropriate. C&G posits that Sacks accepted premium payments from RCIS as early as August 4, 2011,[2] "presumably after receiving an application from RCIS." Thus, based on the law which holds that if one purporting to act as

---

[2]Again, this assertion is unaccompanied by any affidavit or admissible proof.

an agent receives an application, accepts the premium, secures and delivers the policy and does everything necessary to attachment of the risk, the insured may assume that he is the properly authorized agent of the insurer," *Tiner v. Aetna Life Ins. Co.,* 291 So.2d 774, 777 (La. 1974), C&G conjectures that Sacks may have acted as an agent of Republic-Vanguard and that without the depositions of Sacks, R.C.I.S. and Republic-Vanguard, these facts remain at issue.  However, this kind of rank speculation in the face of the affidavit and verified discovery responses of Republic-Vanguard cannot be seen sufficient to create a question of fact.  Again, this matter has been pending for six months; Mr. Sacks made an appearance in this matter on February 7, 2014.  There has been no attempt to augment the record.  There is no competent evidence to support any of these allegations.  There is and never was an insurance policy issued by Republic-Vanguard that covers the damages sought herein.  As such, there can be no liability on the part of Republic-Vanguard.  Conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.

### Request for Sanctions

Given the totality of the circumstances, the Court finds that sanctions are not in order and will not be assessed.   Accordingly,

**IT IS ORDERED** that the "Motion for Summary Judgment by Third-Party Defendant Republic-Vanguard Insurance Company" (Doc. 84) is **GRANTED**.

New Orleans, Louisiana, this 23rd day of July, 2014.

STANWOOD R. DUVAL, JR.
**UNITED STATES DISTRICT COURT JUDGE**